IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHELLE DEULEY, Individually, and in her<br>Capacities as Surviving Spouse of John Deuley,<br>As Executrix of the Estate of John Deuley, Deceased,<br>And as Mother, Guardian and/or Next Friend of<br>Amberlye Marie Deuley, Justin Andrew Deuley, and<br>Jordan Aubrey Deuley, Minor Children of John Deuley;<br>JOSEPH AND KIM DICKINSON; KATHY<br>GIBSON, Individually, and in her Capacities as<br>Surviving Spouse of Gerald Gibson and as<br>Executrix of the Estate of Gerald Gibson, Deceased, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) | |
| v. | )<br>) | C.A. No. 06-605 (GMS) |
| DYNCORP INTERNATIONAL, INCORPORATED,<br>a Delaware Corporation, Parent of the co-defendant<br>DYNCORP entities, formerly known as<br>DI Acquisition Corp; DYNCORP INTERNATIONAL<br>LLC, a Delaware Limited Liability Corporation; and<br>CSC APPLIED TECHNOLOGIES LLC, formerly<br>known as Dyncorp Technical Services, LLC, a<br>Delaware Limited Liability Corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | TRIAL BY JURY DEMANDED |
| Defendants. | ) | |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR REMAND

Neilli Mullen Walsh (2707)
Ben T. Castle (520)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391
(302) 571-6618/6603
Attorneys for Plaintiffs

Dion G. Rassias (2829)
James E. Beasley, Jr. (Of Counsel)
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA  19107
(215) 592-1000
Attorneys for Plaintiffs

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................2

TABLE OF AUTHORITIES.........................................................................3

NATURE AND STAGE OF PROCEEDINGS...............................................5

SUMMARY OF ARGUMENT.......................................................................7

ARGUMENT.................................................................................................8

          THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFFS'
          CLAIMS AND, THEREFORE, THE CASE MUST BE REMANDED TO
          STATE COURT

     A.    STANDARD OF REVIEW..................................................................8

     B.    THE LAW.........................................................................................9

         1. Defendants are "persons" within the meaning of § 1442(a)(1)........................10

         2. Defendants have not established Plaintiffs' claims are based upon
            the Defendants' conduct "acting under" direct orders from a federal officer........10

         3. Defendants do not assert colorable federal defenses.....................................13

         4. Defendants have established no causal relationship between the alleged
            wrongful acts and the direct orders of a federal officer................................16

CONCLUSION............................................................................................ 19

DB02.5607537 1                                                                          065122.1001

TABLE OF AUTHORITIES

Cases

Arizona v. Manypenny ……………………………………………….………..8
451 U.S. 232 (1981)

Boyer v. Snap-On Tools Corp. ………………………………………………….8
913 F. 2d 108 (3rd Cir. 1990)

Boyle v. United Technologies Corp.……………………………………………17
487 U.S. 500 (1988)

Feidt v. Owens Corning Fiberglas Corp…………………………….………...……..9, 10
153 F.3d 124 (3d Cir. 1998)

Freiberg v. Swinerton & Walberg Property Services, Inc…………………………………8, 9, 12
245 F.Supp.2d 1144 (D.Colo. 2002)

Good v. Armstrong World Indus., Inc…………………………..……………………10, 12
914 F.Supp. 1125(E.D.Pa. 1996)

Gross v. German Found. Indus. Initiative……………………………………..………14
456 F.3d 363 (3rd Cir. 2006)

Lane v. Hallibruton……………………………………………………...……..18
2006 U.S. Dist. LEXIS 63948 (S.D. Tex. Sept. 7, 2006)

Maryland v. Soper…………………………………………………...……..10
270 U.S. 9 (1926)

McQuown v. Balckwater Sec. Consulting, LLC………………………………………14
460 F. 3d 576 (4th Cir. 2006)

Megill v. Worthington Pump, Inc………………………………………..……....8, 13, 14
1999 U.S. Dist. LEXIS 4433 (D.Del. March 24, 1999)

Mesa v. California………………………………………………...……..8, 10
489 U.S. 121 (1989)

N.J. Dep't of Evntl. Prot. v. Dixo Co………………………………………..…....9, 10
2006 U.S. Dist. LEXIS 68288 (D.N.J. Sept. 12, 2006)

N.J. Dep't of Evntl. Prot. v. Exxon Mobil Corp………………………………..……......Passim
381 F. Supp. 2d 398 (D.N.J. 2005)

Pack v. AC and S, Inc………………………………………………….....………10
838 F. Supp. 1099 (D. Md. 1993)

Ryan v. Dow Chem. Co………………………………………….………...……..16
781 F. Supp. 934 (E.D.NY 1992)

DB02.5607537.1                                                    065122 1001

Sun Buick, Inc. v. Saab Cars USA, Inc……………………………………………………..…………8
26 F. 3d 1259 (3rd Cir. 1994)

Virden v. Altria Group, Inc…………………………………………………………………..…10
304 F. Supp.2d 832 (N.D.W.V. 2004)

Williams v. GE…………………………………………………………………………………9
418 F. Supp. 2d 610 (M.D. Pa. 2005)

Willingham v. Morgan …………………………………………………………………8, 10
395 U.S. 402 (1969)

Statutes

28 U.S.C. § 1442(a)(1)…………………………………………………………………6, 7
42 U.S.C. § 1651(c)…………………………………………………………………………15
33 USCS § 904 (a)…………………………………………………………………………..15
33 USCS § 905(a)…………………………………………………………………….……..15

Other Authorities

H.R. Conf.Rep. No. 98-1027, 98th Cong., 2d Sess. 24………………………………………15
http://www.oalj.dol.gov/LIBLHC.htm...........................................................................................16
Supreme Court Case No. 06-396……………………………………………………..………14
14C Wright, Miller & Cooper, Federal Practice and Procedure § 3739 at 423 (3rd ed. 1998)………….5

DB02:5607537 1                                                                                        065122 1001

## NATURE AND STAGE OF THE PROCEEDINGS

This Court is reviewing a Motion for Remand.

On August 22, 2006, Plaintiffs filed their Complaint in the Superior Court of the State of Delaware in and for New Castle County. Plaintiffs served this Complaint upon all Defendants on or about September 7, 2006.

On September 27, 2006, Defendants submitted a Notice of Removal.

On October 3, 2006, Defendants filed a Motion for an Extension of Time to File an Answer.

On October 13, 2006, Plaintiffs filed a Response to Defendants' Motion for an Extension of Time (Plaintiffs made clear they did not oppose the Motion), and Plaintiffs filed a Motion for Remand and an accompanying Memorandum of Law.

On October 17, 2006, Plaintiffs and Defendants jointly filed a Local Rule 81.2 Statement declaring that, "Until [the removal] motion is fully briefed, no pending matters require judicial attention." *Statement is Attached as Exhibit "A".*

On October 30, 2006, Plaintiffs' counsel spoke with Defendants' counsel regarding another extension of time, and assured Defendants' counsel that Plaintiffs' counsel would again not oppose a Motion for Extension of Time to Respond to Plaintiffs' Motion for Remand.[1] Confusion apparently resulted, and Defendants' counsel has made several statements about Plaintiffs' counsels' non-responsiveness.

On November 3, 2006, Defendants filed their Response to Plaintiffs' Motion for Remand. Defendants also filed a Motion to Dismiss or, in the Alternative, Motion to Transfer Venue.

Plaintiffs now file a Reply to Defendants' Response to Plaintiffs' Motion for Remand.

When a court is presented with Plaintiffs' Motion for Remand and Defendants' Motion to Dismiss, the court should rule first on the motion to remand. *See* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3739 and 423 (3rd ed. 1998). Pursuant to

---

[1] Plaintiff's counsel have already reviewed their phone records and have located the call. If necessary, this record can be produced.

DB02.5607537.1    065122 1001

the Local Rule 81.2 Statement, the sole issue for disposition at this point is Plaintiffs' Motion for

Remand, which has been narrowed to two questions:

1.  Does the standard of review for removal by a private party pursuant to 28 U.S.C. § 1442(a)(1)

    require a court "broadly construe" the federal officer statute, or does it require a court impose a

    "special burden" on that private party because federalism concerns are not implicated?

2.  Have Defendants have averred sufficient facts to remove pursuant to 28 U.S.C. § 1442(a)(1)?

## SUMMARY OF ARGUMENT

In consideration of remand following removal, defendants bear the burden of establishing Federal jurisdiction. Further, other District Courts (including in the Third Circuit) that have closely reviewed the relevant Supreme Court precedent and the history of federal officer removal have found private party defendants bear a "special burden" in establishing the official nature of their conduct when removing under 28 U.S.C. § 1442(a)(1). No court in the Third Circuit has ever permitted removal under §1442(a)(1) by a nonmilitary service provider. All such nonmilitary service cases, indeed all cases in the past decade, have been remanded because the defendants have failed to show they were "acting under" direct orders of a Federal officer, that they could raise a colorable federal defense, or that those specific directions by the government caused the defendants to engage in the conduct about which plaintiffs complain.

Here, Defendants have only shown their actions occurred under the general auspices of a government contract – indeed, the affidavits and contract Defendants produced outright deny any such specific direction by the government, and show the government clearly sought to encourage the Defendants to "take appropriate action" to secure personnel like the Plaintiffs. Removal was improper under 28 U.S.C. § 1442(a)(1); this Court has no jurisdiction and should remand the case.

7

**ARGUMENT**

THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFFS'
CLAIMS AND, THEREFORE, THE CASE MUST BE REMANDED TO
STATE COURT

A.    STANDARD OF REVIEW

Defendants do not admit, but do not deny, that as the removing party they carry the burden in
establishing this Court's jurisdiction. The law is well-settled a removing party bears the burden on a
motion for remand. *See, e.g.,* Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3rd Cir. 1990) (holding
"[a] party who urges jurisdiction on a federal court bears the burden of proving that federal jurisdiction
exists . . ..").

Defendants dispute the severity of the burden. Defendants cite several Supreme Court cases
(Mesa v. California, 489 U.S. 121, 129 (1989); Willingham v. Morgan, 395 U.S. 402, 405 (1969); and
Arizona v. Manypenny, 451 U.S. 232, 241-42 (1981)), a Third Circuit case (Sun Buick, Inc. v. Saab Cars
USA, Inc., 26 F.3d 1259, 1262 (3d Cir. 1994)), and a District of Delaware case (Megill v. Worthington
Pump, Inc., 1999 U.S. Dist. LEXIS 4433 * 6, (D. Del. March 26, 1999) (*attached as Exhibit "B"*)) to
argue against a "narrow, grudging interpretation of § 1442(a)(1)." All of the Supreme Court cases
involved removal **by Federal officers**. The Third Circuit case, Sun Buick, does not even apply §
1442(a)(1), but rather references it in a single sentence while interpreting § 1441. The only relevant case
is Megill, which applies Sun Buick (without further analysis) for the proposition that § 1442(a)(1) should
be "broadly construed." The severity of the burden was irrelevant in Megill, because, even under that
removal-friendly standard, the Court still ordered remand.

Since Megill, a number of other courts have interpreted the burden for removal under §
1442(a)(1) by private parties such as the Defendants. The most extensive discussion of this burden
appears in Freiberg v. Swinerton & Walberg Property Services, Inc., 245 F.Supp.2d 1144 (D.Colo.2002)
which holds, after review of the applicable Supreme Court precedent (including all of the cases cited by
the Defendants), that "a private party seeking to assert the right of federal officer removal bears a special
burden of establishing the official nature of its activities," and that "[§ 1442(a)(1)] should be read

8

expansively only when the immunity of individual federal officials, and not government contractors, is at issue." Freiberg, 245 F.Supp.2d at 1150. Freiberg was followed by all three subsequent § 1442(a)(1) cases in the Third Circuit: N.J. Dep't of Envtl. Prot. v. Dixo Co., 2006 U.S. Dist. LEXIS 68288 (D.N.J. Sept. 22, 2006) (*attached as Exhibit "C"*); Williams v. GE, 418 F. Supp. 2d 610, (M.D. Pa. 2005); and N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 381 F. Supp. 2d 398 (D.N.J. 2005).

Plaintiffs submit that, in consonance with Freiberg, the federalism policies implicated by §1442(a)(1) are inapplicable to government contractors (particularly when the contractor is sued in their state of incorporation, as here) and that §1442(a)(1) should not be "broadly construed" for the benefit of private parties. Plaintiffs submit Freiberg is correct: following the well-settled strict burden upon private parties who remove to federal court, "a private party seeking to assert the right of federal officer removal bears a special burden of establishing the official nature of its activities." Freiberg, 245 F.Supp.2d at 1150.

B.    THE LAW

Plaintiffs hereby incorporate by reference their original description of the law in the Memorandum of Law attached to their Motion for Remand. As will be shown below, the affidavits and contract produced by the Defendants do not satisfy the Feidt test. In the interest of judicial efficiency, Plaintiffs accept this production as a showing that removal was merely wrong rather than objectively unreasonable, and so withdraw their request for an award of attorney's fees and costs. Following the Local Rule 81.2 Statement submitted jointly by counsel (attached as Exhibit A), and the arguments made in Defendants' Opposition to Remand, Plaintiffs submit that the sole issue pending before this Court on any matter relating to this case is Defendants' removal under § 1442(a)(1).

Defendants agree that this Court, in reviewing their removal under § 1442(a)(1), should apply the four-part test established in Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124 (3d Cir. 1998). To establish removal jurisdiction under § 1442(a)(1), a defendant must prove that:

(1) it is a "person" within the meaning of the statute;

9

(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;

(3) it raises a colorable federal defense; and

(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

Feidt, 153 F.3d at 127. Plaintiffs address each element in turn.

**1.      Defendants Are "Persons" Within The Meaning Of § 1442(a)(1).**

Plaintiffs do not contest Defendants are "persons" within the meaning of § 1442(a)(1).

**2.      Defendants Have Not Established Plaintiffs' Claims Are Based Upon The Defendants' Conduct "Acting Under" Direct Orders From A Federal Officer.**

Several courts in the Third Circuit have already reviewed the cases relied upon by Defendants and have construed "acting under" narrowly. As held in Dixo Co.,

> Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal.

N.J. Dep't of Envtl. Prot. v. Dixo Co., 2006 U.S. Dist. LEXIS 68288 * 8 (D.N.J. Sept. 22, 2006) (*attached as Exhibit "C"), reviewing, inter alia,* Willingham v. Morgan, 395 U.S. 402 (1969); Exxon Mobil, 381 F.Supp.2d at 404 and Virden v. Altria Group, Inc., 304 F.Supp.2d 832, 845 (N.D.W.V. 2004); *quoting* Good v. Armstrong World Indus., Inc., 914 F.Supp. 1125, 1128 (E.D.Pa. 1996) (*reviewing, inter alia,* Int'l Primate Protection League v. Admin. of Tulane Educ. Fund, 500 U.S. 72, 80 (1991), Mesa v. California, 489 U.S. 121 (1989), Pack v. AC and S, Inc., 838 F. Supp. 1099, 1102 (D. Md. 1993), Willingham v. Morgan, 395 U.S. 402 (1969); and Maryland v. Soper, 270 U.S. 9, 33 (1926)).

Defendants have produced four affidavits: two from Ms. Angelic Little-Turner (Exhibits 1 and 19), the Foreign Affairs Officer at the Department of State who managed the Afghan Police Program from Washington, D.C. during the relevant times (and was on Temporary Duty in Kabul at the date of the attack), and two from Mr. Richard Cashon (Exhibits 5 and 7), DynCorp's Program Manager who

managed DynCorp's participation in the CIVPOL Program from Fort Worth, Texas. Defendants have also produced a copy of their CIVPOL contract with the Department of State (Exhibit 4).

The documents clearly show Defendants' tortuous conduct did not occur pursuant to direct orders from a federal officer, but rather under the general auspices of federal direction. The CIVPOL contract describes equipment Defendants were to provide "at a minimum"[2] and very clearly delegates security decisions to Defendants by requiring Defendants "[t]ake appropriate actions to address security threats to contractor personnel and facilities." *Exhibit 4*, pp. 12, 14. "**Minimum**" equipment requirements and obligations to "**take appropriate action**" are not direct orders to refrain from appropriate training, equipment, personnel, or security, they are exactly the opposite: an invitation for Defendants to take the initiative. Defendants' suggestion that their contractual requirement to "take appropriate action" is a "direct order" or "comprehensive and detailed regulation" is preposterous.

The affidavit of Ms. Little-Turner includes several averments of general government control:

> During the life of the CIVPOL mission, the State Department, among other things, provides funding and oversight for mission operations, and manages U.S. policy on CIVPOL operations, other related law enforcement, and civilian security issues. *Exhibit 1*, p. 2, ¶ 10.

> As the contractor, Defendants were responsible for recruiting, selecting and deploying civilian police officers for the CIVPOL mission. Defendants are permitted to subcontract these responsibilities to another entity. *Exhibit 1*, p. 2, ¶ 16.

> State Department regulations and requirements dictate the contractor's recruitment, selection, equipment, and deployment of civilian police officers for a CIVPOL mission. *Exhibit 1*, p. 3, ¶ 17.

> Specifically, under the CIVPOL contract, DynCorp was responsible for, among other things, establishing and maintaining a cadre of up to 2,000 experienced law enforcement personnel ("CIVPOL Personnel") to be available for speedy deployment by DOS on civilian peacekeeping missions. *Exhibit 19*, p. 2, ¶ 6.

---

[2] Defendants blatantly and repeatedly misrepresent the "at a minimum" in this requirement. *See, e.g.*, p. 21 of Defendants' Opposition, where they claim "… the Department of State specified exactly what kind of personal protective equipment must be supplied to personnel in the CIVPOL Contract."

DynCorp was acting under direct orders of the INL [International Narcotics and Law Enforcement Affairs] representative regarding CIVPOL program details. *Exhibit 19*, p.2, ¶ 10.

All aspects of DynCorp's CIVPOL operation in Kabul were established under the specific direction of the INL representative and the State Department. *Exhibit 19*, p. 2, ¶ 14.

The CIVPOL Contract specifically identified the work to be performed under the contract and contained various provisions limiting DynCorp's discretion. *Exhibit 19*, p. 3, ¶ 15.

While Ms. Little-Turner's affidavit avers the legal conclusions of "direct orders" and "specific direction," her affidavit does not refer to any direct orders for Defendants to engage in any specific conduct – indeed, she refers all such detail to the CIVPOL contract, which only imposes **minimum** equipment requirements and obligates the Defendants to "**take appropriate action**."

Moreover, Ms. Little-Turner's affidavit does not establish the frequency of her contacts with the Defendants or with personnel in Afghanistan regarding security measures, the level of detail in the direction she provided, nor does it provide any examples of direct federal orders for Defendants to engage in *any* specific conduct, much less the specific training, equipment, personnel and security failures about which Plaintiffs complain. The sole example of any specific direction at all is an averment that Defendants *could have closed the road and/or barricaded their building*, but would have had to request permission beforehand. Such an averment is the antithesis of a "direct order" because it shows that, even at the outer bounds of Plaintiffs' complaints (i.e., a hypothetically suggested course of action), Defendants were capable of taking action that may have prevented Plaintiffs' harm: they could have requested such a closing or a barricade. Regarding all of the rest of Plaintiffs' claims, like a failure to train, equip, and otherwise secure properly, Defendants have produced no evidence at all of a government official even hinting that such activities were prohibited. The CIVPOL Contract itself puts the burden upon the Defendants to "take appropriate action to address security threats to contractor personnel and facilities."

For a defendant to be "acting under" a Federal office or officer, "[t]he official must have direct and detailed control over the defendant." Freiberg, 245 F.Supp.2d at 1152, *citing* Good, 914 F. Supp. at 1128; *see also* Exxon Mobil Corp., 381 F. Supp. 2d at 404. None of the evidence produced by the

Defendants satisfies their "special burden" – or even the more removal-friendly "broadly construed" burden – to establish direct and detailed control over their conduct.

Defendants cite no cases factually analogous to their own; indeed, they relegate their entire discussion of relevant precedent to a footnote (fn 7) on page 31.  The reason is manifest: none of the cases *anywhere in the country* support the application of § 1442(a)(1) to these facts.  In <u>Exxon Mobil Corp.</u>, the New Jersey Department of Environmental Protection sued Exxon Mobil to recover cleanup costs for petroleum discharges at two of Exxon Mobil's plants.  In support of removal, Exxon Mobil produced "declarations of several executives to demonstrate that the Petroleum Administration for War [during World War II] issued daily orders and directives regarding the manufacture, production, storage, and transfer of petroleum products."  <u>Exxon Mobil Corp.</u> 381 F.Supp.2d. at 404.  The District Court for the District of New Jersey found this government control insufficient to meet the "acting under" element, because the government had not specifically directed Exxon Mobil to engage in the type of waste disposal about which the plaintiff complained.

Defendants have only shown they had a contract with the Department of State to, *inter alia*, "[t]ake appropriate actions to address security threats to contractor personnel and facilities" and to provide, "at a minimum," the described equipment.  Defendants have shown only that they worked under the "general auspices of federal direction," and not under "direct and detailed control" of a Federal officer.  Indeed, the sole evidence they produced regarding control by a Federal officer shows the exact opposite – Defendants clearly were responsible for the security of their own personnel.

**3.    Defendants Do Not Assert Colorable Federal Defenses.**

Defendants need not virtually win their case to assert a "colorable" federal defense.  Yet, they are not entitled to prevail on this element merely because they have asserted the incantations of Federal law.  Defendants assert three federal defenses: the government contractor defense, the political question doctrine, and the Defense Base Act.

In <u>Megill</u>, this Court analyzed the application of the government contractor defense, and quoted <u>Boyle</u> to hold that: "the government contractor defense pre-empts state tort law when the state-imposed

duty of care that is the asserted basis of the contractor's liability . . . is **precisely contrary** to the duty imposed by the Government contract." Megill, 1999 U.S. Dist. LEXIS 4433 * 10, *quoting* Boyle, 487 U.S. at 509 (emphasis in Megill) (*attached as Exhibit "B"*). Here, the state-imposed duty of care is **precisely in agreement** with the duty imposed by the Government contract, which was only to "[t]ake appropriate actions to address security threats to contractor personnel and facilities." Defendants have shown no "reasonably precise specifications" (as required by Boyle) or direct orders or detailed and comprehensive regulations which would contradict with the duties imposed by the state tort law. The government contractor defense is thus clearly inapplicable.

Defendants cite Gross v. German Found. Indus. Initiative, 456 F.3d 363 (3d Cir. 2006), for the Third Circuit's latest statement on the political question doctrine, but ignore the detailed factual analysis required by Gross in order for a court to deny Plaintiffs relief without even hearing the merits of their case. Defendants provide only a single paragraph justifying its application here (on p. 24) and four citations to cases involving events that occurred either on military bases or under the direct, in-person control by military officers. Here, Defendants were private contractors performing a civilian function. Plaintiffs' allegations relate to the training, equipment, and security duties that were very clearly delegated to the discretion of the Defendants. **None** of Plaintiffs' allegations against Defendants, private entities operating under a civilian contract, even relate to government action or government requirements. Similar "political question" arguments were raised by a *military contractor* defending a similar suit based upon conduct that occurred while *escorting an Army convoy* in Iraq in McQuown v. Blackwater Sec. Consulting, LLC, 460 F.3d 576 (4th Cir. 2006). Those arguments were rejected by the Eastern District of North Carolina, rejected by the 4th Circuit on appeal, and denied a petition for stay by Chief Justice Roberts. Id., *see* Supreme Court Case No. 06-396 (stay denied October 24, 2005). If the political question doctrine does not forestall a suit against a military contractor performing amidst a military operation, it certainly does not forestall a suit against a civilian contractor securing its own personnel.

Finally, the Defense Base Act provides immunity to *employers*. None of the Defendants employed Plaintiffs; Plaintiffs were employed by DynCorp International FZ-LLC, an independent entity

which is not party to this action. The Defense Base Act does not provide immunity to the general contractors on government contracts, as Ms. Little-Turner's affidavit clearly states Defendants are. *Exhibit 1*, p. 2, ¶ 14. Defendants attempt a wholly frivolous argument about liability being exclusive under 42 U.S.C. § 1651(c). That section makes exclusive "all other liability of such employer, contractor, subcontractor or subordinate contractor **to his employees (and their dependents)**." That language, mirroring Longshore and Harbor Workers' Compensation Act case law, was included solely to ensure that all **employers**, regardless of their status as contractor, subcontractor, or subordinate contractor would be covered for claims made by their employees. § 1651(c) did not extend protection to third-parties to the employment contract, such as Defendants. In reality, the Defense Base Act applies the Longshore Act to overseas government contracts like the CIVPOL Program. The Longshore Act, in turn, under 33 USCS §905(a), specifically declares "[f]or purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 4." The Defendants' reading of the statute, in which general contractors are also protected by the presence of insurance, was directly and intentionally prohibited by the 1984 Amendments to the Longshore Act. *See* H.R. Conf.Rep. No. 98-1027, 98th Cong., 2d Sess. 24, reprinted in 1984 U.S.Code Cong. & Admin.News 2734, 2771, 2774 (Congressional finding that <u>Washington Metropolitan Area Transit Authority v. Johnson</u>, 467 U.S. 925 (1984), which held the exact position Defendants' now take, "does not comport with the legislative intent of the Act nor its interpretation from 1927 through 1983. The case should not have any precedential effect.")

Defendants also claim that, because an arguable successor-in-interest paid for the coverage, they are entitled to be "employers." 33 USCS § 904(a) explicitly and unambiguously states "A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor." Thus, even if Defendants are

correct that they paid for Plaintiffs' benefits[3], they still would not be immune under the Act because they

secured payment for the benefit of the subcontractor.

**4.     Defendants Have Established No Causal Relationship Between The Alleged Wrongful Acts And The Direct Orders Of A Federal Officer.**

Plaintiffs complain that Defendants:

> A.     Unreasonably denied its employees' requests for security purchases;
>
> B.     Failed to provide basic security to its employees;
>
> C.     Failed to heed its employees' warnings that the location of the headquarters of the AIPP's operations was dangerous and should be moved;
>
> D.     Instructed that vehicle barriers which were deployed in strategic locations outside AIPP headquarters be moved;
>
> E.     Refused to allow its employees to take even minimal steps to protect DynHouse, including closing the adjacent street and/or deploying vehicle barriers, despite awareness of the insecurity of DynHouse and the substantial certainty of an imminent attack in the area where DynHouse was located; and
>
> F.     Disregarded credible warnings of an imminent attack in the area where DynHouse was located.

*Complaint,* ¶ 46. "Critical under [§ 1442(a)(1)] is to what extent defendants acted under federal direction

at the time they were engaged in the conduct now being sued upon." <u>Ryan v. Dow Chem. Co.,</u> 781 F.

Supp. 934, 946 (E.D.NY 1992). <u>Ryan,</u> which provides an even more extensive analysis of the history of

and cases applying § 1442(a)(1) than <u>Freiberg,</u> held that, though some of defendant's actions were under

the "direct and detailed control of various government officers," remand was still appropriate because

"there is no extant federal policy to thwart, save for the generalized federal interest in ensuring that future

Defense Department procurement not be hindered." <u>Id.</u> at 950-951.

---

[3] In fact, a review of the website for United States Department of Labor (http://www.oalj.dol.gov/LIBLHC.HTM) shows the listed employer of Plaintiffs as "DYNCORP TECHNICAL SERVICES," a company Defendants previously informed Plaintiffs does not exist. Further, Defendants represented to the Internal Revenue Service that non-party DynCorp International FZ-LLC was Plaintiffs' employer. If Defendants are deemed Plaintiffs' employer then they must also be deemed as having committed tax and insurance fraud. If Defendants wish to confess to this deception, Plaintiffs should be permitted to amend, and relate-back, their pleadings. Finally, and most importantly, any payments made by Defendants was made for the benefit of the subcontractor employer, DynCorp International FZ-LLC, which is not a party to this action

16

Defendants heavily rely upon a self-serving generalized affidavit of their own Vice President to argue that (1) the ARSO approved the location of DynHouse, (2) the RSO and Afghan Government would have had to approve street closings, and (3) that the CIVPOL Contract specified the personal security equipment to be used. None of these arguments, even accepting Mr. Cashon's affidavit, demonstrate any causal link between direct orders from a Federal officer and the conduct about which Plaintiffs complain.

Boyle v. United Technologies Corp, 487 U.S. 500 (1988) made clear that mere government approval is never sufficient for the government contractor defense. Rather, the state-imposed duty must be "precisely contrary to the duty imposed by the Government contract." Boyle, 487 U.S at 456. Here, regarding (1), Defendants by their own admission chose the location, which the Government then only "inspected and approved." Defendants' Opposition, p. 29. Defendants were clearly free to, inter alia, seek out another location, improve the physical security at DynHouse, or develop emergency procedures. The use of another location would have required approval in order for Defendants to continue collecting on the contract, but at no time did any federal directly order Defendants to remain in that location.

Regarding (2), Defendant's heavy reliance upon a hypothetical solution proposed by Plaintiffs' Complaint demonstrates the weakness of Defendants' arguments. To the extent the pre-approval (which Defendants did not request, or, prior to the warning, create any procedure for requesting in emergency situations) requirement for this single proposed solution is relevant to Plaintiffs' claims, it is as an application of the government contractor defense – which does not provide an independent basis for removal. The absurdity of Defendants' position is revealed by a potential course of the litigation: if this Court uses Plaintiffs' hypothetical solution as the grounds for removal, Plaintiffs need only amend their Complaint to strike the words "… including closing the adjacent street and/or deploying vehicle barricades" from ¶¶ 44 and 46(e), to divest this Court of jurisdiction. The Court could also grant Defendants' a partial motion to dismiss or partial motion for summary judgment on that issue and accomplish the same effect: total divestment of its jurisdiction.

Regarding (3), Defendants argument is preposterous. The very contract provision they cite explicitly says that equipment is to be provided "**at a minimum**." *Exhibit 4*, p. 12. It cannot be contended seriously that any state-imposed duty that Defendants should have provided better equipment would be "precisely contrary" to a government contract which openly contemplates the use of superior equipment and which, indeed, imposes a duty upon the Defendants to "[t]ake appropriate actions to address security threats to contractor personnel and facilities." *Id.*, p.14.

Compare Defendants' situation to others in which removal was granted. For example, in <u>Lane v. Halliburton</u>, 2006 U.S. Dist. LEXIS 63948 (S.D.Tex. Sep. 7, 2006) (*attached as Exhibit "D"*), a truck driver for a company that delivered fuel in Iraq sued his employer for injuries sustained after the Army convoy he was driving in was attacked. The Southern District of Texas, also applying the removal-friendly "construed broadly" burden (which Plaintiffs contest above), found the defendants were "acting under" Federal direction because the Army had not even informed the employer of the truck route until the morning of the mission, the Army had completely controlled "rules of engagement (ROE), highway speeds, actions with vehicles, frequencies, recovery procedures, actions on contact, and other standard convoy topics," and only military drivers had maps of the route. <u>Lane</u> at * 9-10.

Here, Defendants have averred nothing of the sort. Defendants have not shown any direct orders to engage in or refrain from any conduct, nor any comprehensive or detailed regulations. Indeed, the CIVPOL contract and the affidavits show exactly the opposite: personnel security was the sole duty of the Defendants. The only averment Defendants have made with any specificity is that a hypothetical act Plaintiffs believe could have been done – the closing of the street or the placing of barricades – would have first required permission. Even on that single issue, Defendants had forty-eight hours from the ISAF warning during which such permission could have been requested, and several months presence in the country during which emergency procedures for making such requests could have been established. None of these failures to act were done pursuant to any government instruction at all, much less under "direct and detailed" control of a federal officer or pursuant to "detailed and comprehensive" regulations.

18

**CONCLUSION**

Defendants have not met the special burden imposed upon private parties who seek removal under the federal officer statute, 28 U.S.C. § 1442(a)(1). This Court does not have jurisdiction over the case and should remand it. Therefore, Plaintiffs respectfully request that the case be remanded to State Court.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Neilli Mullen Walsh (2707)
Ben T. Castle (520)
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391
(302) 571-6603/6618

Dion G. Rassias (2829)
James E. Beasley *of Counsel*
Maxwell S. Kennerly *of Counsel*
The Beasley Firm
1125 Walnut Street
Philadelphia, PA 19103
(215) 592-1000
Attorneys for Plaintiffs

Dated: November 13, 2006

19

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHELLE DEULEY, Individually, and in her<br>Capacities as Surviving Spouse of John Deuley,<br>As Executrix of the Estate of John Deuley, Deceased,<br>And as Mother, Guardian and/or Next Friend of<br>Amberlye Marie Deuley, Justin Andrew Deuley, and<br>Jordan Aubrey Deuley, Minor Children of John Deuley;<br>JOSEPH AND KIM DICKINSON; KATHY<br>GIBSON, Individually, and in her Capacities as<br>Surviving Spouse of Gerald Gibson and as<br>Executrix of the Estate of Gerald Gibson, Deceased, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | C.A. No. 06-605 (GMS) |
| DYNCORP INTERNATIONAL, INCORPORATED,<br>a Delaware Corporation, Parent of the co-defendant<br>DYNCORP entities, formerly known as<br>DI Acquisition Corp; DYNCORP INTERNATIONAL<br>LLC, a Delaware Limited Liability Corporation; and<br>CSC APPLIED TECHNOLOGIES LLC, formerly<br>known as Dyncorp Technical Services, LLC, a<br>Delaware Limited Liability Corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | TRIAL BY JURY DEMANDED |
| Defendants. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR REMAND**

EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHELLE DEULEY, Individually, and in her<br>Capacities as Surviving Spouse of John Deuley,<br>as Executrix of the Estate of John Deuley, Deceased<br>And as Mother, Guardian and/or Next Friend of<br>Amberyle Marie Deuley, Justin Andrew Deuley, and<br>Jordan Aubrey Deuley, Minor Children of John Deuley;<br>JOSEPH AND KIM DICKINSON; KATHY<br>GIBSON, Individually, and in her Capacities as<br>Surviving Spouse of Gerald Gibson and as<br>Executrix of the Estate of Gerald Gibson, Deceased<br><br>    Plaintiffs,<br><br>    v.<br><br>DYNCORP INTERNATIONAL, INCORPORATED,<br>a Delaware Corporation, Parent of the co-defendant<br>DYNCORP entities, formerly known as<br>DI Acquisition Corp.; DYNCORP INTERNATIONAL<br>LLC; a Delaware Limited Liability Corporation; and<br>CSC APPLIED TECHNOLOGIES LLC, formerly<br>known as Dyncorp Technical Services, LLC, a<br>Delaware Limited Liability Corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **C. A. No. 06-cv-605** |

### *Local Rule 81.2 Statement*

Pursuant to Rule 81.2 of the Local Rules of Civil Practice and Procedure of the

United States District Court for the District of Delaware, the parties hereby jointly submit

this statement identifying all pending matters which require judicial attention.

Defendants removed this matter to this Court on September 27, 2006 from the

Superior Court of the State of Delaware, In and For New Castle County. There are

currently no matters pending in the Superior Court that require judicial attention. On

October 10, 2006, plaintiffs filed a motion to remand this matter back to the Superior

Court. That motion currently is pending, but the parties have not fully briefed the motion

to date. Until that motion is fully briefed, no pending matters require judicial attention.


YOUNG CONAWAY STARGATT
& TAYLOR LLP

    /s/ Neilli M. Walsh
Neilli M. Walsh (ID No. 2707)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
Telephone: 302.571.6603
Facsimile: 302.576.3343

*Attorneys for plaintiffs*


October 17, 2006


SMITH KATZENSTEIN & FURLOW LLP

    /s/ Robert K. Beste
Robert K. Beste, III (DE ID No. 3931)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: 302.652.8400
Facsimile: 302.652.8405

*Attorneys for defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHELLE DEULEY, Individually, and in her<br>Capacities as Surviving Spouse of John Deuley,<br>As Executrix of the Estate of John Deuley, Deceased,<br>And as Mother, Guardian and/or Next Friend of<br>Amberlye Marie Deuley, Justin Andrew Deuley, and<br>Jordan Aubrey Deuley, Minor Children of John Deuley;<br>JOSEPH AND KIM DICKINSON; KATHY<br>GIBSON, Individually, and in her Capacities as<br>Surviving Spouse of Gerald Gibson and as<br>Executrix of the Estate of Gerald Gibson, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>DYNCORP INTERNATIONAL, INCORPORATED,<br>a Delaware Corporation, Parent of the co-defendant<br>DYNCORP entities, formerly known as<br>DI Acquisition Corp; DYNCORP INTERNATIONAL<br>LLC, a Delaware Limited Liability Corporation; and<br>CSC APPLIED TECHNOLOGIES LLC, formerly<br>known as Dyncorp Technical Services, LLC, a<br>Delaware Limited Liability Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br><br><br><br><br><br><br>C.A. No. 06-605 (GMS)<br><br><br><br>TRIAL BY JURY DEMANDED |

**<u>PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR REMAND</u>**

EXHIBIT B

Case 1:06-cv-00605-GMS    Document 22-3    Filed 11/13/2006    Page 2 of 8

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 4433                    Page 1 of 8

Service: **Get by LEXSEE®**
Citation: **1999 U.S. dist. lexis 4433**

*1999 U.S. Dist. LEXIS 4433, ***

DAVID E. MEGILL and JENNY LEE W. MEGILL, his wife, Plaintiffs, v. WORTHINGTON PUMP, INC., et al., Defendants.

Civil Action No. 98-76-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1999 U.S. Dist. LEXIS 4433

March 26, 1999, Decided

**DISPOSITION: [\*1]** Plaintiffs' motion to remand granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff brought an action in state court against defendant, who supplied equipment to United States Navy vessels, alleging that he was injured by exposure to asbestos in the equipment through defendant's' negligence. Defendant filed a notice of removal from state to federal court pursuant to 28 U.S.C.S. § 1442(a)(1), and plaintiff filed a motion to remand.

**OVERVIEW:** Plaintiff brought an action in state court alleging that he was injured through exposure to asbestos manufactured by defendant while working on board United States Navy vessels. Plaintiff asserted that defendant was negligent in failing to substitute other materials for asbestos, to warn, and to adequately research the dangers of asbestos. Defendant filed a notice of removal pursuant to 28 U.S.C.S. § 1442(a)(1). Plaintiff filed a motion to remand to state court, which the court granted. It held that to establish removal jurisdiction under 28 U.S.C.S. § 1442(a), a defendant must establish that it was a person within meaning of the statute, that plaintiff's claims were based upon defendant's conduct acting under a federal office, that it raised a colorable federal defense, and that there was a causal nexus between claims and the conduct performed under color of a federal office. The court concluded that because defendant had not established that the U.S. Navy prohibited it from effecting product safety, there was no causal connection between plaintiff's claims and the conduct performed under color of a federal office and thus there was no colorable federal defense.

**OUTCOME:** The court granted plaintiff 's motion to remand his action, in which he alleged exposure to asbestos containing-equipment on United States Navy vessels, to state court, after defendant removed the action to federal court. The court held that because there was no causal connection between plaintiff's claims and the conduct performed under color of a federal office, there was no colorable federal defense.

**CORE TERMS:** asbestos, contractor, specifications, removal, federal officer, warning, pump, federal office, state law, colorable, asbestos-containing, manufacture, distribute, color, causal connection, state tort, regulations, vessel, military, supplied, gasket, military equipment, failure to warn, supervised, discovery, removing, supplier, similarly situated, reasons stated, drawing

**LexisNexis(R) Headnotes** ⬧ Hide Headnotes

Civil Procedure > Removal > Basis > General Overview

*HN1* See 28 U.S.C.S. § 1442(a)(1).

Civil Procedure > Removal > Basis > Cases Involving Federal Officers

Governments > Federal Government > Claims By & Against

Governments > Federal Government > Employees & Officials

*HN2* Where a defendant attempts to remove litigation from state to federal court pursuant to the federal officer removal statute, 28 U.S.C.S. § 1442(a)(1), it is defendant's burden to demonstrate that subject matter jurisdiction exists and that removal is proper. There is a distinction between the removal provisions of § 1441, which are to be strictly construed against removal and pursuant to which all doubts should be resolved in favor of remand, and the provisions of § 1442(a), the federal officer removal statute, which are to be broadly construed. More Like This Headnote

Civil Procedure > Removal > Basis > General Overview

Governments > Federal Government > Claims By & Against

*HN3* To establish removal jurisdiction under 28 U.S.C.S. § 1442(a), a defendant must establish that: (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. More Like This Headnote

Torts > Products Liability > Design Defects

Torts > Products Liability > Duty to Warn

Torts > Public Entity Liability > Immunity > Sovereign Immunity

*HN4* Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the discretionary function would be frustrated - i.e., they assure that the design feature in question was considered by a government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability. This analysis has been applied in failure to warn cases. More Like This Headnote

Civil Procedure > Federal & State Interrelationships > Erie Doctrine

Torts > Products Liability > Duty to Warn

Torts > Public Entity Liability > Liability > General Overview

HN5 ⚓ The government contractor defense pre-empts state tort law when the state-imposed duty of care that is the asserted basis of the contractor's liability is precisely contrary to the duty imposed by the government contract. In order to establish that this displaces any state law duty to warn, defendant must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear that the requirement of government approval of reasonably precise specifications mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, and thus that the government itself dictated the content of the warnings meant to accompany the product. More Like This Headnote

**COUNSEL:** For plaintiffs: Robert Jacobs, Esquire, Vincent J.X. Hedrick, II, Esquire, Jacobs & Crumplar, Wilmington, Delaware.

For Worthington Pump, Inc., defendant: Christian J. Singewald, Esquire, White & Williams, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION: MEMORANDUM OPINION**

Dated: March 26, 1999

Wilmington, Delaware

Sue L. Robinson, District Judge

## I. INTRODUCTION

Plaintiffs David E. Megill and Jenny Lee W. Megill brought suit against numerous defendants in the Superior Court of the State of Delaware in and for New Castle County. In their complaint, it is alleged that plaintiff David E. Megill was exposed to asbestos and asbestos-containing products and that plaintiffs were injured thereby. The complaint contains allegations that Worthington Pump, Inc. ("Worthington") and other defendants were

> at all times pertinent directly or indirectly engaged in the mining, manufacturing, distribution, sales, licensing, leasing, installation, removal or use of asbestos and asbestos-containing products. They were also engaged in the development, manufacture, distribution, sales, **[*2]** licensing or leasing of equipment procedures and/or technology necessary to mine, manufacture, sell, distribute, install, remove and the use of asbestos and asbestos-containing products.

(D.I. 2, Ex. A, 8) Plaintiffs further allege that

> the defendants were negligent in conducting the above activities in that despite the fact that the defendants knew or should have known that asbestos exposure could result in serious injury, disease and/or death they:

>> (a) Failed to substitute, suggest, promote or require the substitution

of materials other than asbestos;

(b) Failed to adequately warn all the potential victims of asbestos including the plaintiff as well as other users, bystanders, household members and members of the general public of the risks of asbestos;

(c) Failed to adequately test, research and investigate asbestos and/or its effects prior to sale, as to use, and/or exposure of the plaintiff and others similarly situated;

(d) Failed to adequately package, distribute and use asbestos in a manner which would minimize the escape of asbestos fibers therefore adding to the exposure of the plaintiff and others similarly situated;

(e) Failed **[*3]** to take adequate steps to remedy the above failure, including but not limited to recall of asbestos and asbestos products, to conduct research as to how to cure or minimize asbestos injuries, to distribute asbestos so as to render it safe or safely remove the asbestos now in place.

(D.I. 2, Ex. A, 13)

Through preliminary discovery, defendant Worthington determined that plaintiff David Megill was exposed to its products while working on board United States Navy vessels. Based on this information, Worthington filed a notice of removal in February 1998 pursuant to $^{HN1}$ 28 U.S.C. § 1442(a)(1), which provides in relevant part that

[a] civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

Plaintiffs responded thereto by filing a motion to remand. Following limited **[*4]** discovery, briefing was completed.

For the reasons stated below, plaintiffs' motion to remand (D.I. 5) shall be granted.

## II. FACTS

The relevant facts of record are not in dispute. Defendant Worthington supplied various pumps to the U.S. Navy for use on naval vessels. As averred by John P. McAdams,

all Navy combat vessel equipment, including Worthington pumps, were built according to U.S. Navy and Military specifications under the supervision of Naval officers and civilian employees. Such equipment was approved for installation aboard these vessels exclusively by the Navy and its designated officers and employees:

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 4433

Case 1:06-cv-00605-GMS    Document 22-2    Filed 11/13/2006    Page 6 of 8

Page 5 of 8

(D.I. 2, Ex. G, 13) According to the military specifications included in the record, asbestos was specifically mentioned twice: 1) paragraph 3.2.8 provides that "all packing and gaskets shall be in accordance with Drawing B-153" which, in turn, specifies "asbestos metallic cloth, sheet" and "asbestos metallic cloth, gasket;" and 2) paragraph 3.3.9.14 provides that "pump casing joints shall be made up using compressed asbestos sheet gaskets." (See. e.g., D.I. 2, Ex. D to Ex. F and Ex. A to Ex. G) The court has discerned no evidence that the specifications **[*5]** address the issues of product research (aside from quality assurance and performance testing), packaging, labels, and warnings as they relate to asbestos. Similarly, there is no evidence of record that Worthington's commercial products (which comport with commercial specifications) in any way deviated from the products sold to the Navy (which comported with military specifications). (D.I. 44 at 38-39, 115, 124)

## III. ANALYSIS

As noted above, *HN2* defendant Worthington has removed this litigation from state to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Consequently, it is Worthington's burden to demonstrate that subject matter jurisdiction exists and that removal was proper. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). In this regard, the Third Circuit apparently has drawn a distinction between the removal provisions of [section] 1441, which "'are to be strictly construed against removal and all doubts should be resolved in favor of remand,'" id. (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)), and the provisions of the federal officer removal statute, which **[*6]** are to be "broadly construed." Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1262 (3d Cir. 1994). *HN3* To establish removal jurisdiction under § 1442(a), a defendant such as Worthington must establish that:

> (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998). See Mesa v. California, 489 U.S. 121, 129, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989).

With respect to the first of the above requirements, the court finds that, as a corporation, defendant Worthington is a "person" within the meaning of the federal officer removal statute. See Good v. Armstrong World Indus., Inc., 914 F. Supp. 1125, 1127-28 (E.D. Pa. 1996).

The second factor has been described as requiring "a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations." **[*7]** Id. at 1128. In Good, as in the case at bar, the removing defendant offered evidence that it "manufactured and supplied the equipment pursuant to strict direction and control of the United States Navy/Department of the Navy" through "contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse's work by Naval officers and by civilian employees of the U.S. Navy." Id. at 1128-29. Recognizing that "the United States Navy and many individuals employed by the Navy worked with Westinghouse," the court in Good nevertheless concluded

that Westinghouse had not demonstrated "that the Secretary of the Navy or any other federal officer directly controlled and supervised the work of Westinghouse." Id. The court in Good further found that none of the documents relied on by Westinghouse even mentioned asbestos, bolstering the court's conclusion in that case that no federal officer had "specified the use of asbestos in the design and manufacture" of the Westinghouse products at issue. Id. at 1130.

Following the Third Circuit's mandate to broadly construe the federal officer removal statute, the court finds that Worthington **[*8]** has "set forth the substance of the regulations and specifications" which required "the use of asbestos in the design and manufacture" of its pumps supplied to the Navy. Id. at 1130. Under these circumstances, the court concludes that defendant has adequately demonstrated that it acted "pursuant to an officer's direct orders or comprehensive and detailed regulations." Id. at 1128.

The third factor requires a removing defendant to show that there is a colorable federal defense to a plaintiff's claims. Defendant Worthington asserts the federal common law government contractor defense, as enunciated by the Supreme Court in Boyle v. United Technologies Corp., 487 U.S. 500, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988). n1 The Supreme Court, in deciding when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect, held in Boyle that

> HN4
>
> liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United **[*9]**  States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated - *i.e.*, they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

Id. at 512.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The record contains no evidence that the pumps sold by Worthington to the U.S. Navy were different from those pumps sold commercially. Because the Third Circuit in Carley v. Wheeled Coach, 28 V.I. 310, 991 F.2d 1117 (3d Cir. 1993), concluded that the government contractor defense should be available to all contractors who are "compelled by a contract to perform an obligation for the United States," even where a nonmilitary product is at issue, 991 F.2d at 1120, the Boyle analysis is still appropriate.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 24433    Filed 11/13/2006    Page 8 of 8

Case 1:06-cv-00605-GMS    Document 32-23    Page 7 of 8

The Boyle analysis has been applied in failure to warn cases, such as the one at bar. See e.g., In re Hawaii Fed. Asbestos Cases, 960 F.2d 806 (9th Cir. 1992); In re Joint E. & S. Dist. New York Asbestos Litig., 897 F.2d 626 (2d Cir. 1990). Indeed, the determination of whether defendant has demonstrated a colorable defense under Boyle collapses into the analysis required for determining whether defendant has shown a causal connection between plaintiffs' claims and the conduct performed under color of a federal office.

The Supreme Court in Boyle held that [HN5] the government contractor defense pre-empts state tort law when "the state-imposed duty of care that is the asserted basis of the contractor's liability . . . is **precisely contrary** to the duty imposed by the Government contract. . . ." Boyle, 487 U.S. at 509 (emphasis added). As recognized by the courts above, in order to establish that Boyle displaces any state law duty to warn, defendant

must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear to us that Boyle's requirement **[*11]** of government approval of "reasonably precise specifications" mandates that the federal duties be **imposed** upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, . . . and thus that the Government itself "dictated" the content of the warnings meant to accompany the product.

In Re Joint E. & S. Dist. New York Asbestos Lit., 897 F.2d at 630. In In Re New York, as well as in In Re Hawaii, the respective courts found that the government in no way had prohibited the contractors from placing warnings on their asbestos-containing products. Both courts concluded that "there thus existed no conflict between [the contractors'] state law duty to provide adequate warnings to the users of their [products] and the [product design] conditions imposed on them pursuant to the agreements they had entered into with the Government." In Re Hawaii, 960 F.2d at 812. To put the point differently, a crucial element of both the Boyle defense and the removal requirements is missing if the contractor fails to establish a causal connection between the conduct being supervised by the federal **[*12]** officer/government and the conduct deemed offensive in the plaintiff's complaint.

In the case at bar, plaintiffs assert liability based on the following conduct: 1) failure to substitute other materials for asbestos; 2) failure to warn; 3) failure to adequately research the dangers of asbestos; 4) failure to adequately package, distribute and use asbestos; and 5) failure to remedy the above failures. Worthington has not established that the U.S. Navy prohibited it from substituting materials or otherwise changing the specifications, so long as protocol was followed. (D.I. 44 at 25-32, 41-6) Likewise, there is no evidence of record that the U.S. Navy prohibited defendant from, or otherwise directed defendant in, issuing warnings or researching and effecting product safety. Under these circumstances, the court concludes that there is no causal connection between plaintiffs' claims and the conduct performed under color of a federal office; thus, there is no colorable federal defense.

## IV. CONCLUSION

For the reasons stated, plaintiffs' motion to remand is granted.

An order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHELLE DEULEY, Individually, and in her Capacities as Surviving Spouse of John Deuley, As Executrix of the Estate of John Deuley, Deceased, And as Mother, Guardian and/or Next Friend of Amberlye Marie Deuley, Justin Andrew Deuley, and Jordan Aubrey Deuley, Minor Children of John Deuley; JOSEPH AND KIM DICKINSON; KATHY GIBSON, Individually, and in her Capacities as Surviving Spouse of Gerald Gibson and as Executrix of the Estate of Gerald Gibson, Deceased, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 06-605 (GMS) |
| DYNCORP INTERNATIONAL, INCORPORATED, a Delaware Corporation, Parent of the co-defendant DYNCORP entities, formerly known as DI Acquisition Corp; DYNCORP INTERNATIONAL LLC, a Delaware Limited Liability Corporation; and CSC APPLIED TECHNOLOGIES LLC, formerly known as Dyncorp Technical Services, LLC, a Delaware Limited Liability Corporation, | ) ) ) ) ) ) ) ) ) | TRIAL BY JURY DEMANDED |
| Defendants. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR REMAND**

EXHIBIT C

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. LEXIS 68288

*2006 U.S. Dist. LEXIS 68288, \**

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., Plaintiffs, v. DIXO COMPANY, INC., et al., Defendants.

View the Full Docket from LexisNexis CourtLink for 2:06cv1041
Civil Action No. 06-1041 (SRC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2006 U.S. Dist. LEXIS 68288

September 22, 2006, Decided

**NOTICE: [\*1]** NOT FOR PUBLICATION

**CORE TERMS:** removal, federal officer, recommendation, thorium, federal jurisdiction, hazardous, memorandum, burden of establishing, burden of proof, federal office, jurisdictional, complained-of, litigated, complain, removing, standard of review, retain jurisdiction, discovery, site, subject matter jurisdiction, reasons discussed, party asserting, federal agency, private party, set forth, contractor, correctly, auspices, notice, color

**COUNSEL:** For NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, Plaintiff: BARRY A KNOPF, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, ESQS, SADDLE BROOK, NJ; BRENDAN E. RUANE, OFFICE OF THE NJ ATTORNEY GENERAL, TRENTON, NJ; LEONARD Z. KAUFMANN, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, LLP, SADDLE BROOK, NJ.

For THE ADMINSTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, Plaintiff: BARRY A KNOPF, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, ESQS, SADDLE BROOK, NJ; BRENDAN E. RUANE, OFFICE OF THE NJ ATTORNEY GENERAL, TRENTON, NJ.

For DIXO COMPANY, INC., SANDRA AND JERRY CORPORATION, Defendants: DAMON R. SEDITA, SEDITA, CAMPISANO & CAMPISANO, LLC, FAIRFIELD, NJ.

For STEPAN COMPANY, Defendant: JOHN MCGAHREN, STEPHANIE REBECCA FEINGOLD, PATTON BOGGS, LLP, NEWARK, NJ US.

For E.I. DUPONT DE NEMOURS & COMPANY, Defendant: EUGENE J. KUZINSKI, BALLARD SPAHR ANDREWS & INGERSOLL, LLP, VOORHEES, NJ.

For DOW CHEMICAL COMPANY, Defendant: LINDA J. MACK, FOX ROTHSCHILD LLP, LAWRENCEVILLE, NJ.

For PPG INDUSTRIES, INC., Defendant: JOSEPH F. LAGROTTERIA, ST. JOHN & WAYNE, ESQS., NEWARK, NJ.

For CHEMICAL LEAMAN TANK LINES, INC., Defendant: LAURIE ANN POULOS, **[\*2]** HOLLAND & KNIGHT LLP, NEW YORK, NY.

For STEPAN COMPANY, Counter Claimant: JOHN MCGAHREN, PATTON BOGGS, LLP, NEWARK, NJ US.

For NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, Counter Defendant: BRETT D. RICKMAN, OFFICE OF NJ ATTORNEY GENERAL, TRENTON, NJ.

For JAMES J. KEATING, INC., Cross Claimant: KERRY E. HIGGINS, MCKENNA, DUPONT, HIGGINS & BYRNES, P.C., RED BANK, NJ.

**JUDGES:** Stanley R. Chesler, United States District Judge.

**OPINION BY:** Stanley R. Chesler

**OPINION:**

**CHESLER,** District Judge

This matter comes before the Court upon Plaintiffs' Motion To Remand this action (docket item # 6) to the Superior Court of New Jersey, Law Division, and upon the Report and Recommendation (docket item # 37) issued by United States Magistrate Judge Patty Shwartz pursuant to 28 U.S.C. § 636(b)(1) on June 12, 2006. Defendant Stepan Company n1 ("Stepan") submitted a timely objection to the Report and Recommendation, and Plaintiffs thereafter submitted a brief in response to Stepan's objection. This Court has considered the papers submitted by the parties in connection with the motion to remand and with Judge Shwartz's Report and Recommendation. It has also examined **[*3]** the analysis of the Magistrate Judge, set forth in the Opinion delivered on the record on June 12, 2006, recommending that this action be remanded to state court. Following a *de novo* review of those matters in the Report and Recommendation to which objection has been filed, and for the reasons discussed below, this Court adopts the June 12, 2006 Report and Recommendation and grants Plaintiffs' motion to remand this action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Stepan Company owns the Maywood Chemical Company site, one of the properties involved in this action for natural resource damages. Stepan Company acquired Maywood Chemical Company in 1959. For purposes of simplicity, this Court will refer to the entity as "Stepan" regardless of whether the conduct examined occurred before or after 1959.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## I. STANDARD OF REVIEW OF THE REPORT AND RECOMMENDATION

Title 28 U.S.C. § 636(b)(1) authorizes a district judge to designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations **[*4]** for the disposition of certain motions. 28 U.S.C. § 636(b)(1) Within ten days of being served with the magistrate judge's Report and Recommendation, any party may file objections to the Report and Recommendation. Id. The statute provides that, in the event an objection is submitted,

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive farther evidence or recommit the matter to the magistrate judge with instructions.

Id.

## II. BACKGROUND

This Court adopts the magistrate judge's recitation of the factual and procedural background of this action, set forth in the transcript of proceedings before Judge Shwartz on June 12, 2006. (Transcript of Motion Before the Honorable Patty Shwartz ("Tr.") dated June 12, 2006 at 25:15-29:17.)

## III. LEGAL ANALYSIS

A. Federal Officer Removal Statute

Defendant Stepan's removal petition asserts that this **[*5]** Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), which provides that actions against the "United States or any agency thereof or any officer **(or any person acting under that officer)** of the United States or of any agency thereof sued in an official or individual capacity for any act under color of such office . . ." may be removed to federal court. 28 U.S.C. § 1442(a)(1) (emphasis added). As the language of the statute makes clear, a private party may remove an action based on this "federal officer" removal statute. Id.; New Jersey Department of Environmental Protection v. Exxon Mobil Corp. ("Exxon Mobil"), 381 F.Supp.2d 398, 401 (D.N.J. 2005). To establish federal officer jurisdiction, a defendant must demonstrate that (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998). **[*6]** This standard is known as the "Feidt test."

As with removal petitions based on other statutes, the burden of establishing the propriety of removal and the existence of federal jurisdiction under section 1442(a)(1) is upon the removing party. Feidt, 153 F.3d at 127; Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085, 111 S. Ct. 959, 112 L. Ed. 2d 1046 (1991); Gilberg v. Stepan Co., 24 F.Supp.2d 325, 330 (D.N.J. 1998). Because the action at bar involves a private party's attempt to remove under the federal officer removal statute, the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable here. Exxon Mobil, 381 F.Supp.2d at 403 n. 5. To the contrary, a private party seeking to assert the right of federal officer removal "'bear[s] a special burden of establishing the official nature of [its] activities.'" Id. (quoting Freiberg v. Swinerton & Walberg Prop. Svcs., Inc., 245 F.Supp.2d 1144, 1150 (D.Colo. 2002)).

B. Application of the Feidt Test

Based upon its review of plaintiffs' motion to remand **[*7]** and Stepan's objection to the Report and Recommendation under the Feidt test and under the applicable burden of proof, this Court holds that defendant has failed to meet its burden of establishing the official nature of the conduct of which plaintiffs complain. Magistrate Judge Shwartz properly applied the Feidt test to evaluate the existence of jurisdiction under section 1442(a)(1) and correctly concluded that defendant had failed to satisfy the second and fourth prongs of that test. n2 This Court finds, as the magistrate judge did, that Stepan simply has not provided sufficient evidence to establish that its discharges of hazardous substances were controlled or directed by the government.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 In Exxon Mobil, the court noted that "many courts combine the second and fourth components [of the Feidt test] into one analysis" and elected to follow suit. Exxon Mobil, 381 F.Supp.2d at 403 n. 7. This Court will likewise analyze the second and fourth prongs together.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

To establish that **[*8]** it was "acting under" a federal officer within the meaning of section 1442(a)(1), the private actor defendant must demonstrate that it performed the complained-of activity at the direction of official federal authority. Willingham v. Morgan, 395 U.S. 402, 409, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969); Exxon Mobil, 381 F.Supp.2d at 404; Arness v. Boeing North American, Inc., 997 F.Supp. 1268, 1273 (C.D. Cal. 1998). Moreover, courts generally require that the private actor defendant demonstrate that the federal officer had "direct and detailed control" over the litigated activity. Exxon Mobil, 381 F.Supp.2d at 404; Arness, 997 F.Supp. at 1273; Reed v. Fina Oil & Chem. Co., 995 F.Supp. 705, 710 (E.D.Tex. 1998). The analysis can be summed up as follows:

> Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal. **[*9]**

Good v. Armstrong World Indus., Inc., 914 F.Supp. 1125, 1128 (E.D.Pa. 1996) (citations omitted).

The Court takes notice and accepts as true that Stepan manufactured radiological and chemical products for use by, and pursuant to contracts with, the United States government and its agencies. (Certification of John McGahren in Support of Stepan Company's Brief In Opposition to Plaintiffs' Motion To Remand ("McGahren Cert.") Ex. 1-10.) The fact that Stepan was a government contractor at the relevant time that the allegedly wrongful conduct occurred is, however, unavailing under the Feidt test. Cf. Virden v. Altria Group, Inc., 304 F.Supp.2d 832, 845 (N.D.W.V. 2004) (observing that "paradigm cases in which private actors have succeeded in removing cases under the statute have involved government contractors with limited discretion") (emphasis added)). Stepan must demonstrate that the government had "direct and detailed control" over the litigated activity.

In this case, insofar as the claims against Stepan are concerned, the litigated activity is Stepan's discharges n3 of hazardous substances on Stepan's Maywood, New Jersey property.
 **[*10]** (Complaint, PP 68, 70, 73, 75, 81, 86.) In support of its position that the government did in fact direct and control discharges of hazardous material at the Maywood site, Stepan cites two items. (Defendant Stepan's Brief in Opposition to Plaintiffs' Motion For Remand at 12.) One of these is a September 21, 1987 Administrative Order, issued by the United States Environmental Protection Agency ("EPA"), which states in its findings of fact and conclusions of law that "the Atomic Energy Commission (AEC) issued a license to the Maywood Chemical Co. for the possession of thorium wastes stored on the property" and that the "AEC approved the cleanup and burial of wastes on company property." (Notice of Removal, Ex. F, PP 11-12.) The other item is an October 22, 1963 internal company

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 82288    Page 6 of 8

Case 1:06-cv-00605-GMS   Document 13-4   Filed 11/13/2006   Page 6 of 7    Page 5 of 7

memorandum discussing the thorium waste pile on the Maywood property. In relevant part, that memorandum states as follows:

> However, in 1947 the AEC prompted us to collect the thorium wastes separately and store them for possible emergency use in the future. Therefore, we contend that the AEC prevented Maywood from solving its problem (waste) concurrent with operating the thorium plant and especially prior **[\*11]** to the AEC act [sic] of 1954. For this reason, we intend to approach the AEC when we are ready to move on the thorium dike asking their [sic] financial help in correcting the situation.

(McGahren Cert., Ex. 13.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq., "discharge" means "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within the jurisdiction of the State." N.J.S.A. 58:10-23.11b

- - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Neither of these two documents satisfies Stepan's burden of demonstrating that it acted under the direction of a federal officer in discharging hazardous substances. The AEC's approval of cleanup and burial of waste on the **[\*12]** property does not establish that the United States or one its agencies or departments exercised direct and detailed control over the discharges of which plaintiffs complain. Even viewing this evidence in the light most favorable to Stepan, this Court concludes that, at best, it may be interpreted as showing that Stepan was acting under the general auspices of the government, a showing which falls far short of what is required to establish federal officer removal jurisdiction. The internal memorandum provides no support for Stepan's position. The opinion of an employee of the company that the AEC "prompted" Stepan to collect and store thorium waste and that it is therefore to blame for Stepan's thorium waste problem does not demonstrate that Stepan performed the complained-of discharges at the direction of federal officials.

An opinion brought to the Court's attention by Stepan in a supplemental letter brief dated July 27, 2006 does not alter this Court's analysis. That opinion, in the case of Pierce Morgan v. Ford Motor Co., Civil Action No. 06-1080, concerned a motion for remand based on the failure to meet the requirements of the federal officer removal statute. (Transcript **[\*13]** of Proceedings Before the Honorable Joel A. Pisano dated July 5, 2006 ("Pierce Morgan Tr.") at 3:4-18: attached to July 27, 2006 Supplemental Letter Brief as Ex. 2.) The gravamen of the Pierce Morgan Complaint was that defendant were negligent in their performance of an environmental clean-up as directed by an Administrative Consent Order issued by the EPA. (Pierce Morgan Tr. at 50:4 - 51:5.) The Court found, therefore, that defendants were acting under a federal office with respect to the complained-of conduct. (Id. at 51:22-52:2.) For the reasons discussed above, that is plainly not the case in the action at bar, in which the gravamen of the Complaint does not relate to any activity that Stepan has shown was undertaken under the government's detailed direction.

In short, Stepan has failed to present evidence that the government directed and controlled any aspect of Stepan's disposal of hazardous substances or the associated discharges. n4 It has not met its burden of demonstrating that federal jurisdiction exists under the federal officer removal statute.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 In support of its objections to the magistrate judge's Report & Recommendation, Stepan also submitted the Declaration of Robert Zoch, which it purports constitutes "additional facts and evidence concerning the wartime and post-war control of the federal government over the disposal of waste materials at the Maywood site and the resulting discharges." (Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 14.) This "additional evidence" reiterates that the AEC directed Stepan to segregate and store thorium and lithium waste. It does not, however, touch upon the facts crucial to the analysis of federal officer subject matter jurisdiction in this case. Specifically, like the EPA Administrative Order and internal company memorandum discussed above, it does not provide any indication that the government controlled the discharges of which plaintiff complains.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*14]**

C. Standard of Review of Remand Motion

Stepan also objects to the magistrate judge's Report & Recommendation on the ground that, according to Stepan, Magistrate Judge Shwartz did not apply the correct standard of review to plaintiffs' motion to remand. In particular Stepan asserts that the magistrate judge incorrectly required that Stepan, as the removing party, prove the facts substantiating federal officer removal, rather than accepting as true its allegations of those facts as stated in the Notice of Removal. Stepan argues, in sum, that "the magistrate judge applied a burden of proof . . . that was far more demanding than what is required for a motion to remand under federal officer jurisdiction." (Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 10.) Stepan's position is incorrect and finds no support in our jurisprudence.

Once jurisdiction is challenged, the party invoking federal jurisdiction bears the burden of proving that jurisdiction is proper. Corwin Jeep Sales v. American Motors Sales, 670 F.Supp. 591, 595 (M.D.Pa.1986); see also Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004) **[*15]** (holding, in the context of a removal under 28 U.S.C. § 1441, that "[t]he party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court"). While this Court will accept all well-pleaded allegations as true, it need not credit a party's "bald assertions" or "legal conclusions." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). In Gilberg, this Court held that "[a] defendant cannot establish that it was a federal agency or employee, by merely alleging in its Notice, as Stepan does, that it was an 'agent or employee of the United States Government."' Gilberg, 24 F.Supp.2d at 347. With respect to Stepan's removal petition, Stepan cannot establish that it was acting under the direction of a federal agency or officer by merely alleging that the "harm alleged by Plaintiffs is directly related to the actions taken both by the government itself and pursuant to detailed direction from the government . . ." (Notice of Removal P 26.) The position taken by Stepan, in which it urges that the Court must accept as true its allegations that **[*16]** the criteria for federal officer removal are met, would render the well-established burden of proof on the party asserting federal jurisdiction empty and artificial. This Court concludes that the magistrate judge applied the correct standard and properly looked to Stepan to present evidence supporting the jurisdictional averments of its removal petition.

D. Stepan's Request for Limited Jurisdictional Discovery

During oral argument before Magistrate Judge Shwartz on the motion for remand, Stepan requested that the Court retain jurisdiction over this case to permit the parties to conduct discovery on the merits of the claims for use of that discovery in the remanded state action. (Tr. 21:14 - 22:19, 23:20 - 24:4.) The magistrate judge was clearly correct in denying that application. If this Court does not have jurisdiction, it cannot "retain jurisdiction" and allow this action to develop in federal court without any basis of authority to adjudicate this controversy. Stepan did not present at oral argument, and does not cite in its brief objecting to the Report & Recommendation, any legal authority for this Court to retain non-existent jurisdiction.

As for its revised request that **[*17]** the Court retain jurisdiction to allow the parties to conduct jurisdictional discovery (Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 20), Stepan correctly recites the law, but its request will not be granted. The District Court "has inherent power and jurisdiction to decide whether it has jurisdiction." In Re Automotive Refinishing Paint Antitrust Lit., 358 F.3d 288, 303 (3d Cir. 2004) (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)). The Court may, in its discretion, order discovery to ascertain facts that bear on whether the Court has jurisdiction to entertain the merits of the action. Openheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253, n. 13 (1978); Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455-56 (3d Cir. 2003). The Court, however, declines to order such jurisdictional discovery in this case. Stepan requests this relief for the first time in its brief objecting the Report & Recommendation, and the Court will therefore not entertain it.

## IV. CONCLUSION

For the foregoing **[*18]** reasons, the Court adopts Magistrate Judge Shwartz's Report & Recommendation and accordingly grants Plaintiffs' motion to remand. An appropriate form of order will be filed together with this Opinion.

s/ Stanley R. Chesler

United States District Judge

DATED: September 22, 2006

Service:  **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 68288**
View:     Full
Date/Time: Monday, November 13, 2006 - 4:41 PM EST



About LexisNexis  | Terms & Conditions
Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHELLE DEULEY, Individually, and in her<br>Capacities as Surviving Spouse of John Deuley,<br>As Executrix of the Estate of John Deuley, Deceased,<br>And as Mother, Guardian and/or Next Friend of<br>Amberlye Marie Deuley, Justin Andrew Deuley, and<br>Jordan Aubrey Deuley, Minor Children of John Deuley;<br>JOSEPH AND KIM DICKINSON; KATHY<br>GIBSON, Individually, and in her Capacities as<br>Surviving Spouse of Gerald Gibson and as<br>Executrix of the Estate of Gerald Gibson, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>DYNCORP INTERNATIONAL, INCORPORATED,<br>a Delaware Corporation, Parent of the co-defendant<br>DYNCORP entities, formerly known as<br>DI Acquisition Corp; DYNCORP INTERNATIONAL<br>LLC, a Delaware Limited Liability Corporation; and<br>CSC APPLIED TECHNOLOGIES LLC, formerly<br>known as Dyncorp Technical Services, LLC, a<br>Delaware Limited Liability Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06-605 (GMS)<br><br><br><br>TRIAL BY JURY DEMANDED |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR REMAND**

EXHIBIT D

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 63948**

*2006 U.S. Dist. LEXIS 63948, \**

REGINALD CECIL LANE, ET AL, Plaintiffs, v. HALLIBURTON, A CORPORATION, ET AL, Defendants.

View the Full Docket from LexisNexis CourtLink for 4:06cv1971
CIVIL ACTION H-06-1971

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

2006 U.S. Dist. LEXIS 63948

September 7, 2006, Decided
September 7, 2006, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, a former truck driver employee and his guardian, filed suit in the 333rd Judicial District of Harris County, Texas, alleging state law claims including fraud and deceit, fraud in the inducement, and intentional concealment of material facts. Defendant military contractor employers, providing transportation services in Iraq, removed the action, asserting 28 U.S.C.S. § 1442(a) federal officer removal. Plaintiffs moved for remand.

**OVERVIEW:** While delivering fuel in Iraq, the truck driver's convoy came under fire. He suffered a partial arm loss and irreparable brain damage. According to the Army's report, the decision of where to send the truck driver's convoy was not relayed to the employer until a military unit arrived at the staging area that morning. Many of the drivers, both military and civilian, knew only to follow the vehicle in front of them. The Army's supervision appeared significant, detailed, and ongoing. The employers asserted the government contractor defense, the "combat activities" exception to the Federal Tort Claims Act, the state secrets doctrine, the Defense Production Act of 1950, federal immunities, and the political question doctrine as defenses, the viability of any one of which would be sufficient for the third requirement for federal officer removal. If the evidence showed the Army controlled the decisions of when and where to send the convoys, it could be argued that a review of Army policy relating to conduct in a theater of war would implicate separation of powers issues. The employers had a colorable defense based on political question. Removal under § 1442(a) was proper.

**OUTCOME:** The plaintiffs' motion to remand was denied.

**CORE TERMS:** removal, convoy, federal officer, political question, route, colorable, military, driver, supervision, contractor, causal, nexus, coordinate, federal office, federal forum, prerequisite, chemical, ongoing, color, prong, civilian, mission, truck, service contract, applicability, well-pleaded, deployment, qualify, branches of government, political department

## LexisNexis(R) Headnotes ❖ Hide Headnotes

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > Well-Pleaded Complaint Rule 

Civil Procedure > Removal > Basis > Cases Involving Federal Officers 

Civil Procedure > Removal > Proceedings > General Overview

*HN1* It is a basic tenant of removal that the defendant bears the burden of establishing federal jurisdiction over the case. Ordinarily, the court is bound by the well-pleaded complaint rule, restricting it to a survey of the entire record, including the defendant's pleadings, only when required to shed light on the plaintiff's pleadings. However, 28 U.S.C.S. § 1442(a) creates an exception to the well-pleaded complaint rule because it predicates removal on the existence of a colorable federal defense. As such, the court may look to the defendant's pleadings as well in determining jurisdiction. More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers

*HN2* The federal officer removal statute is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant. But, once the defendant qualifies for 28 U.S.C.S. § 1442(a), the right of removal is absolute. In enacting § 1442(a), Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. Although the right to federal officer removal is not unbounded, it must not be frustrated by a grudgingly narrow interpretation. More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers

*HN3* In order to remove under 28 U.S.C.S. § 1442(a), a defendant must meet three prerequisites. First, the defendant must be a "person" as contemplated by the statute. Second, the defendant must show that it acted pursuant to a federal officer's directions and that a causal nexus exists between its actions under color of federal office and the plaintiff's claims. Lastly, the defendant must assert a "colorable federal defense." More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers

*HN4* In analyzing the "color of federal office" requirement for removal under 28 U.S.C.S. § 1442(a), the requirement should be given a broad reading so as not to frustrate the statute's underlying rationale. However, it has limits and may only arise when there is a federal interest in the matter. The inquiry centers around the causal nexus between the federal officer's directions and the plaintiff's claims. More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers

*HN5* The amount of ongoing supervision in either a service contract or a contract for goods supplies the necessary causal nexus for removal under 28 U.S.C.S. § 1442(a), not the subject of the contract itself. More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers

*HN6* Federal officer removal under 28 U.S.C.S. § 1442(a) must be predicated upon the averment of a federal defense. Only one colorable defense is needed to meet this prong of the test. One of the main purposes of the federal officer removal statute was to ensure a federal forum where federal defenses could be litigated. Therefore, the defendants need not prove the asserted defense but need only articulate its

"colorable" applicability to the plaintiff's claims.  More Like This Headnote

Constitutional Law > The Judiciary > Case or Controversy > Political Questions 🔍ᴬᴸᴸ

HN7 ⚓ The political question doctrine excludes from judicial review those controversies
which revolve around policy choices and value determinations constitutionally
committed for resolution to the halls of Congress or the confines of the Executive
Branch.  More Like This Headnote

Constitutional Law > The Judiciary > Case or Controversy > Political Questions 🔍ᴬᴸᴸ

HN8 ⚓ The United States Supreme Court has set out a list of six formulations to aid courts
in a discriminating inquiry into the precise facts and posture of a particular case for
deciding whether the political question doctrine applies: (1) prominent on the surface
of any case held to involve a political question is found a textually demonstrable
constitutional commitment of the issue to a coordinate political department; (2) or a
lack of judicially discoverable and manageable standards for resolving it; (3) or the
impossibility of deciding without an initial policy determination of a kind clearly for
nonjudicial discretion; (4) or the impossibility of a court's undertaking independent
resolution without expressing lack of the respect due coordinate branches of
government; (5) or an unusual need for unquestioning adherence to a political
decision already made; (6) or the potentiality of embarrassment from multifarious
pronouncements by various departments on one question. One of these formulations
must be inextricable from the case at bar.  More Like This Headnote

Constitutional Law > The Presidency > Commander in Chief 🔍ᴬᴸᴸ

Military & Veterans Law > Defense Powers > U.S. President 🔍ᴬᴸᴸ

HN9 ⚓ The United States Constitution allocates the power of Commander in Chief of the
United States Army and Navy to the executive branch. U.S. Const. art II, § 2, cl.
1.  More Like This Headnote

COUNSEL: [*1]  For Reginald Cecil Lane, an individual, by and through Linda Marlene Lane,
as the duly appointed Conservator/Guardian of Reginald Cecil Lane, Linda Marlene Lane, an
individual, Plaintiffs: Kenneth T Fibich, Fibich Hampton, Houston, TX; Roger E Hawkins, Todd
Andrew Daley, Hawkins Prata & Daley LLP, Los Angeles, CA.

For Halliburton, a Corporation, Kellogg Brown & Root, Inc., a Corporation and Wholly Owned
Subsidiary of Halliburton and KBR Holdings, LLC, Service Employees International Inc., a
Foreign Corporation and Wholly Owned Subsidiary of Halliburton and Kellogg Brown & Root
International, Inc., DII Industries, LLC, a Wholly Owned Subsidiary of Halliburton Energy
Services, Inc., a Corporation, Halliburton Energy Services, Inc., a corporation, Kellogg Brown
& Root Services, Inc., a Corporation and Wholly Owned Subsidiary of Kellogg Brown & Root,
Inc., Kellogg Brown & Root International, Inc., a Corporation and Wholly Owned Subsidiary
of Kellogg Brown & Root, Inc., a Corporation, Defendants: James H Hall, Jones Day, Houston,
TX; David Kasanow, McKenna Long et al, Washington, DC; Herbert Lawrence Fenster,
McKenna Long & Aldridge, Washington, DC; Raymond B Biagini, McKenna Long [*2]  &
Aldridge LLP, Washington, DC.

For Strategic Ecomm, Inc., Defendant: Daniel F Crowder, Beck & Crowder LLP, Houston, TX.

For Webrecruiter, Defendant: Margaret T Brenner, Bracewell & Giuliani LLP, Houston, TX;
Thomas A Kissane, Schlam Stone and Dolan, New York, NY.

For Professional Services Council, Movant: Alan Chvotkin, Arlington, VA.

For Professional Services Council, Amicus: Alan Chvotkin, Arlington, VA.

**JUDGES:** Gray H. Miller, United States District Judge.

**OPINION BY:** Gray H. Miller

**OPINION: ORDER**

Pending before the court is the plaintiffs' motion to remand. Dkt. 25. After considering the parties' arguments, the evidence, and the applicable law, the court concludes that the motion for remand should be DENIED.

### BACKGROUND

The facts as alleged in the plaintiffs' original petition are as follows. Dkt. 1, Ex. 2. The defendant Kellogg Brown & Root (KBR) performed non-combat logistical services for the United States Army Material Command in Iraq under the Logistics Civil Augmentation Program (LOGCAP) contract. The Army specified services to be performed through Task Orders. Task Order 59 directed KBR and its affiliates to institute a hiring campaign to recruit civilian **[*3]** truck drivers for work in Iraq.

In October 2003, the plaintiff Reginald Cecil Lane left his current employment to work for KBR as a truck driver in Iraq. Under Task Order 43, Lane and the other civilian truck drivers were assigned to deliver fuel from their station at Camp Anaconda to specified locations in the Area of Operations. On April 9, 2004, Lane was assigned to the Longstreet Convoy, one of several fuel convoys. Lane's convoy was dispatched into an area known by the Army to have been subjected to continuous attack by anti-American factions. Lane's convoy came under fire along its route injuring many of the civilian drivers. Lane, in particular, suffered the partial loss of an arm and irreparable brain damage.

Plaintiffs allege state court actions, including fraud and deceit, fraud in the inducement, intentional concealment of material facts, intentional misrepresentations, intentional infliction of physical and emotional injuries, and common law civil conspiracy to commit fraud. The plaintiffs seek general, punitive and exemplary damages. The plaintiffs also requested that the state court enjoin KBR and all other defendants from continuing "their unlawful, fraudulent and **[*4]** deceitful actions."

### PROCEDURAL HISTORY

On April 7, 2006, the plaintiffs moved to intervene in _Fisher v. Halliburton_, 2006 U.S. Dist. LEXIS 26971, No. H-05-1731. _Fisher_ Dkt. 90. On May 8, 2006, Judge Atlas denied their motion to intervene. _Fisher_ Dkt. 95. Accordingly, on May 9, 2006, the plaintiffs filed suit in the 333rd Judicial District of Harris County, Texas, _Lane v. Halliburton_, No. 2006-28755. In a timely fashion, the defendants (Halliburton) n1 removed the case to this court pursuant to 28 U.S.C. §§ 1442 (federal officer removal) and 1441 (federal question removal). Dkt. 1. The plaintiffs timely filed a motion to remand. Dkt. 25.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 All the defendents joined in the removal. In the interest of clarity, the court will call them Halliburton, or KBR where appropriate, throughout this order. The Halliburton defendants consist of: Halliburton; KBR Holdings, LLC; Kellogg Brown & Root, Inc.; Service Employees

International Inc.; DII Industries, LLC; Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International, Inc. The other defendants are Strategic Ecomm, Inc., Webrecruiter, and Doe Defendants 1 Through 10.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*5]**

## FEDERAL OFFICER REMOVAL UNDER 28 U.S.C. § 1442(a).

*HN1* It is a basic tenant of removal that the defendant bears the burden of establishing federal jurisdiction over the case. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998). Ordinarily, the court is bound by the well-pleaded complaint rule, restricting it to a survey of the entire record, including the defendant's pleadings, only when required to shed light on the plaintiff's pleadings. *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992). However, section 1442(a) creates an exception to the well-pleaded complaint rule because it predicates removal on the existence of a colorable federal defense. *Id.* As such, the court may look for the defendant's pleadings as well in determining jurisdiction.

*HN2* The federal officer removal statute "is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant." *Mesa v. California*, 489 U.S. 121, 136, 109 S.Ct. 959, 968, 103 L. Ed. 2d 99 (1989). But, once the defendant qualifies for section 1442(a), the **[\*6]** right of removal is absolute. *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981). In enacting section 1442(a), Congress "has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969). Although "the right to [federal officer] removal is not unbounded," it must not be "frustrated by a grudgingly narrow interpretation." *Winters*, 149 F.3d at 398.

*HN3* In order to remove under section 1442(a), Halliburton must meet three prerequisites. *Winters*, 149 F.3d at 398-400. First, Halliburton must be a "person" as contemplated by the statute. *Id.* at 398. Second, Halliburton must show that it "acted pursuant to a federal officer's directions and that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims." *Id.* Lastly, Halliburton must assert a "colorable federal defense." *Id.* at 400. Halliburton easily satisfies the first prong since the Fifth Circuit has held that corporate entities are "persons" under section **[\*7]** 1442(a). *Id.* The remaining two prongs are vigorously contested by the parties.

### 1. Actions Under Color of Federal Office.

*HN4* In analyzing the "color of federal office" requirement, the Fifth Circuit notes that the requirement should be given a broad reading "so as not to frustrate the statute's underlying rationale." *Winters*, 149 F.3d at 398. However, it has limits and may only arise when there is a federal interest in the matter. *Id.* The inquiry centers around "the causal nexus between the federal officer's directions and the plaintiff's claims." *Id.* Here, the connection between the government's level of control over the truck convoys under Task 43, specifically the deployment of the Longstreet Convoy on April 9, 2004, and the injuries Mr. Lane sustained as a result of that deployment must be examined.

The Fifth Circuit has not yet addressed the level of supervision necessary to support the causal nexus in a service contract. But, parallels may be drawn to its analysis of the sustained, long-term contract for goods at issue in *Winters v. Diamond Shamrock Chemcal Company.* In *Winters*, the court reviewed the amount of control the Defense Department **[\*8]** had over the chemical companies with whom it had contracted to make

Agent Orange. n2 *Id.* The contractual relationship between the United States and the chemical manufacturer lasted from 1962 to 1971. *Id.* at 390. The Defense Department dictated the specific make-up, packaging and delivery of Agent Orange. *Id.* at 400. Additionally, the Department maintained on-going supervision and strict control over Agent Orange's development throughout the life of contract. *Id.* at 399. The court found that significant, detailed, ongoing supervision of the contractor was sufficient to allow the contractor to qualify for federal officer removal.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Agent Orange was a chemical blend of herbicides used as a defoliator by the United States military in the Vietnam war. *Winters*, 149 F.3d at 390.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Much has been made by the parties about the difference between a service contract and a contract for goods. However, [HN5] the amount of ongoing supervision in either contract **[*9]** supplies the necessary causal nexus, not the subject of the contract itself. According to an exhibit to the plaintiff's original petition, the Department of the Army was inextricably involved in any decision to deploy a convoy. Dkt. 1, Ex. 2 (Plaintiff's Original Petition, Ex. 9). According to the Army's investigation report issued August 2, 2004, the decision of where to send the convoys on April 9, 2004 was not relayed to Kellogg Brown & Root (KBR) until the 724th Transportation Company (TC) arrived at the staging area that morning. *Id.* In fact the report describes the mission as "a no notice mission." *Id.* The Army also made the following findings:

KBR had no prior knowledge of the mission change.

. . .

The personnel of the 724th TC and KBR did not have any knowledge of the location or route to BIAP, n3 other than one military guide.

. . .

Planning of Route Selection: The route provided the 724th TC was given to the 172 CSG S3 n4 from the 13th COSCOM. n5

. . .

The convoy briefing given by the CC n6 did cover the information required for members of the convoy. The CC reviewed the change in rules of engagement (ROE), highway speeds, actions with vehicles, **[*10]** frequencies, recovery procedures, actions on contact, and other standard convoy topics. [Redacted], the guide for the convoy, outlined in the sand/stone with his boot a rough diagram of the route and exits. The military drivers had a rough strip map of the route but the KBR drivers had no type of maps. Many of the drivers both military and KBR did not understand the route and knew only to follow the vehicle in front of them.

*Id.* The amount of control over the route information, the manner, and the security for each

convoy amply satisfies the second prerequisite for federal officer removal. The Army's supervision was significant, detailed and ongoing.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Baghdad International Airport.

n4 172nd Corps Support Group's Operations and Training Officer.

n5 13th Corps Support Command.

n6 Convoy Commander. While this can refer to the KBR CC or the military CC, the context suggests that it was a military CC because of references to "his soldiers" and "his PLT SGT" (Platoon Sargent).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### [*11] 2. Assertion of a Colorable Federal Defense.

*HN6* "Federal officer removal under 28 U.S.C. § 1442(a) must be predicated upon the averment of a federal defense." *Mesa*, 489 U.S. at 139, 109 S.Ct. at 970. Only one colorable defense is needed to meet this prong of the test. *See, e.g., Winters*, 149 F.3d at 400. One of the main purposes of the federal officer removal statute was to ensure a federal forum where federal defenses could be litigated. *Id.* Therefore, the "defendants need not prove the asserted defense but need only articulate its 'colorable' applicability to the plaintiff's claims." *Id.* The defendants have asserted several possible federal defenses, including the government contractor defense, the "combat activities" exception to the Federal Tort Claims Act, the state secrets doctrine, the Defense Production Act of 1950, federal immunities, and the political question doctrine, the viability of any one of which will be sufficient to meet the third requirement for federal officer removal. Dkt. 1.

*HN7* "The political question doctrine excludes from judicial review those controversies which revolve around policy choices **[*12]** and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230, 106 S.Ct. 2860, 2866, 92 L. Ed. 2d 166 (1986). *HN8* The Supreme Court has set out a list of six formulations to aid courts in a "discriminating inquiry into the precise facts and posture of the particular case." *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L. Ed. 2d 663 (1962).

(1) Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department;

(2) or a lack of judicially discoverable and manageable standards for resolving it;

(3) or the impossibility of deciding without an initial policy determination of a

kind clearly for nonjudicial discretion;

(4) or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;

(5) or an unusual need for unquestioning adherence to a political decision already made;

(6) or the potentiality of embarrassment from **[*13]** multifarious pronouncements by various departments on one question.

*Id.* "[O]ne of these formulations [must be] inextricable from the case at bar." *Id.* Therefore, for Halliburton to present a colorable political question argument, it must have alleged facts sufficient to bring at least one of the *Baker* formulations into question.

The first and arguably most important formulation is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." *Id.* [HN9] The Constitution allocates the power of Commander in Chief of the United States Army and Navy to the executive branch. U.S. CONST. art II, § 2, cl. 1. At issue in this case is the question of whether Halliburton or the Army had control over the decision to deploy the convoy. As demonstrated in the above discussion regarding "under color of federal office," Halliburton has made an initial showing that the Army made all of the decisions at issue. If the evidence shows that the Army did control the decisions of when and where to send the convoys, Halliburton could make the argument that a review of Army policy relating to conduct in a theater of war would implicate separation **[*14]** of powers issues. This same initial showing could arguably impact two or even three other formulations under *Baker*. Halliburton could argue that such an examination would require "initial policy determinations of a kind clearly for nonjudicial discretion," or would express a "lack of the respect due coordinate branches of government." *Id.*

The applicability of the political question defense to independent contractors in a similar setting has been demonstrated recently in two district court decisions. In a case involving the bombing of a dining facility managed by KBR for the Army in Iraq, Judge Lake dismissed the case for want of jurisdiction based on political question. *Smith v. Halliburton*, 2006 U.S. Dist. LEXIS 61980, No. 4:06CV0462, 2006 WL 2521326, (S.D. Tex Aug. 30, 2006). Also, in a Georgia case, the district court dismissed as non-justiciable a negligence case brought by the family of a U.S. soldier killed by a suicide bomber while escorting a KBR convoy. *Whitaker v. Kellogg Brown & Root*, 2006 U.S. Dist. LEXIS 45708, No. 4:05-CV-78, 2006 WL 1876922, (M.D. Ga. July 6, 2006). The court does not express an opinion with regard to the merits of the political question arguments or the degree of **[*15]** similarity of these two recent cases to the instant case beyond finding that Halliburton has a colorable defense based on political question. Halliburton may not have the evidence to prove that it was under the control of the Army at the time in question, but it has presented enough facts to allow it to have this issue decided in a federal forum. *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S.Ct. 1813, 1817, 23 L. Ed. 2d 396 (1969) (holding that a defendant need only "put in issue the questions" in order to allow "the validity of [his] defenses [to] be determined in the federal courts"). Halliburton has satisfied all three prerequisites for federal officer removal under section 1442 (a). Accordingly, the court finds that it has subject matter jurisdiction to hear the case at bar.

**CONCLUSION**

Based on the foregoing discussion and analysis, the plaintiff's motion to remand is DENIED.

Signed at Houston, Texas on September 7, 2006.

Gray H. Miller

United States District Judge

Service:    **Get by LEXSEE®**
Citation:   **2006 U.S. Dist. LEXIS 63948**
View:      Full
Date/Time:  Monday, November 13, 2006 - 5:37 PM EST

 LexisNexis®

About LexisNexis  | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.