IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICHELLE DEULEY, *et al.*,

    Plaintiffs,

v.

DYNCORP INTERNATIONAL, INC.,
*et al.*,

    Defendants.

C.A. No. 06-605 GMS

## MEMORANDUM

### I. INTRODUCTION

Presently before the court are plaintiffs' Motion to Remand (D.I. 10) and defendants' Motion to Dismiss (D.I. 13). For the reasons that follow, the court will grant plaintiffs' motion and deny the defendants' motion as moot.

### II. BACKGROUND

This action arises out of the deaths of John Deuley ("Deuley") and Gerald Gibson ("Gibson") (collectively, the "decedents"), and injuries sustained by Joseph Dickinson ("Dickinson") while performing their respective employment duties as civilian police officers in Kabul, Afghanistan. (D.I. 1, Ex. A at ¶ 1.) The plaintiffs[1] originally filed this action for survival, wrongful death, and personal injury against defendants, DynCorp International, Inc. ("DynCorp"), DynCorp International, LLC ("DI LLC"), and CSC Applied Technologies LLC

---

[1] Plaintiff Michelle Deuley brings this action individually and in her capacities as surviving spouse of John Deuley and Executrix of the Estate of John Deuley. Plaintiffs Joseph and Kim Dickinson bring this action individually, jointly and severally. Plaintiff Kathy Gibson brings this action individually and in her capacities as surviving spouse of Gerald Gibson and Executrix of the Estate of Gerald Gibson. (D.I. 1, Ex. A.)

("CSC") in the Superior Court of the State of Delaware in and for New Castle County on August 22, 2006. (D.I. 1 at ¶ 1.) On September 27, 2006, the defendants removed the action to this court based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (*Id.* at ¶ 16.) On October 25, 2006, the defendants further moved to dismiss the action for failure to state a claim. (D.I. 13.)

In their complaint, plaintiffs allege the following facts. On August 29, 2004, Messrs. Deuley and Gibson were killed, and Mr. Dickinson was seriously injured in a vehicle-borne improvised explosive device ("VBIED") attack by Al Qaeda, while performing their duties as civilian police officers in Kabul, Afghanistan. (D.I. 1, Ex. A ¶¶ 2-4.) At the time of the attack, the decedents and plaintiff Dickinson were employed by the defendants' subcontractor, DynCorp International LLC-FZ ("FZ-Dubai") to provide civilian police training and security services in Afghanistan. (*Id.* at ¶ 11.) The defendants subcontracted with FZ-Dubai to help perform their duties under a Civilian Police ("CIVPOL") contract with the U.S. Department of State.[2] (*Id.* at ¶¶ 10-11.) Under the CIVPOL contract, the defendants were required to perform certain services, including recruiting, selecting, equipping, and deploying civilian police officers to help the government of Afghanistan train and develop a modern, indigenous police force. (*Id.* at ¶ 9.) The CIVPOL contract also contained provisions relating to employee safety, including general requirements that the defendants and any subcontractors maintain a minimal standard of security described by the contract. (D.I. 1, Ex. A at ¶ 21.)

---

[2] The defendants were general contractors under the CIVPOL contract. The defendants subcontracted with FZ-Dubai to hire personnel and to provide services in support of the CIVPOL contract. At the time of the attack, Messrs. Deuley, Dickinson, and Gibson were employees of FZ-Dubai. FZ-Dubai is not, however, a party to this action.

Plaintiffs allege that prior to the VBIED attack that killed Messrs. Deuley and Gibson and injured plaintiff Dickinson, on August 28, 2004, the defendants received a warning from the International Security Assistance Force of a probable IED attack on coalition targets in downtown Kabul that was to occur over the next 48 hours. (D.I. 1, Ex. A at ¶ 42.) Plaintiffs further allege that despite the substantial certainty of an imminent attack, the defendants failed to take necessary safety precautions, and to provide and maintain adequate security, including failing to take even minimal measures for protection. (*Id.* at ¶ 44.) According to the plaintiffs, as a result of these failures, on August 29, 2004, Messrs. Deuley and Gibson were killed, and Mr. Gibson was seriously injured when Al Qaeda operatives, indeed, detonated a VBIED immediately adjacent to the entrance of the building in downtown Kabul where they were stationed. (*Id.* at ¶ 45.) In their motion, plaintiffs contend that this action was properly filed in state court, that removal to this court was improper, and that this action should be remanded to state court. (D.I. 10.)

### III. DISCUSSION

A party seeking removal has the burden of establishing federal jurisdiction. *Bover v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citations omitted). Since a lack of jurisdiction would cause a court's judgment to be invalid, the removal statute should be construed so that all doubts are resolved in favor of remanding the action back to state court. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). When considering a motion to remand, "the district court must focus on the plaintiff's complaint at the time the petition for removal was filed," and "must assume as true all factual allegations of the

3

complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

Here, the defendants contend that the removal of this action was proper based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The defendants further contend that this case should not be remanded to state court because they intend to assert defenses based on federal statutory and common law. The court will consider each of these arguments in turn.

### A. The Federal Officer Removal Statute

The federal officer removal statute enables a defendant to remove to federal court an action brought against the "United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ... ." 28 U.S.C. § 1442(a)(1) (emphasis added). It is recognized that this provision is not to be construed narrowly. *See Megill v. Worthington Pump, Inc.*, No. 98-76-SLR, 1999 U.S. Dist. LEXIS 4433, at *5-6 (D. Del. Mar. 26, 1999) (citing *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994)).

In the Third Circuit, a defendant attempting to establish removal jurisdiction under section 1442(a)(1) must show "that (1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citations omitted). Although the "acting under" a federal office requirement is distinct from the "causal nexus" requirement, these two *Feidt* elements "tend to

collapse into a single requirement: that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Parlin v. Dyncorp International, Inc.*, No. 08-107-JJF, 2008 U.S. Dist. LEXIS 76994, at *4 (D. Del. Sept. 30, 2008) (quoting *Reg'l Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 724 (E.D. Pa. 2008)).[3]

In *Parlin*, the plaintiff brought an action in state court alleging survival and wrongful death claims arising out of an incident that occurred while the plaintiff's spouse, Samuel Parlin, was employed by the defendants in Iraq. *See Parlin*, 2008 U.S. Dist. LEXIS 76994, at *1. The defendants employed Mr. Parlin to support a CIVPOL contract in Iraq. *Id.* at *2. Mr. Parlin was later killed by an IED while traveling through Baghdad at the direction of the defendants. *Id.* at *5. The defendants successfully removed the action to federal court and the plaintiff subsequently filed a motion to remand. *Id.* at *1-2. The court in *Parlin* noted that the defendants sent Mr. Parlin through Baghdad even though they were aware of the extreme danger. *Parlin*, 2008 U.S. Dist. LEXIS 76994, at *5. Nonetheless, the *Parlin* court ultimately concluded that the defendants were unable to show that the alleged tortious conduct regarding the safety, security, and the circumstances surrounding Mr. Parlin's death were taken pursuant to a federal officer's *direct orders or to comprehensive and detailed regulations*. *Id.* at *15-16 (emphasis added).

Here, as in *Parlin*, after considering the parties' submissions and the applicable law, the court concludes that the defendants were not acting pursuant to a federal officer's direct orders or

---

[3] *See also Good v. Armstrong World Indus.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996) ("Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.")

to comprehensive and detailed regulations. At best, the defendants can show that they were acting under the general auspices of the U.S. Department of State. Absent more, such conduct is insufficient to satisfy the "acting under" component of 28 U.S.C. § 1442(a)(1). *See, e.g., Highmark*, 541 F. Supp. 2d at 724. The defendants contend that their failure to upgrade security equipment or to provide vehicle barriers around the building that was attacked were, in fact, the result of detailed regulations. They further contend that in order to upgrade equipment, they would have had to obtain permission for the Resident Security Officer ("RSO") at the U.S. Embassy; and that in order to obtain vehicle barriers around the building, they would have had to secure permission from both the RSO and the Afghan Government. This court is persuaded by Judge Farnan's sound analysis in his decision in *Parlin*. As such, the court is convinced that these ancillary requirements do not dictate a different conclusion than that reached the court in *Parlin*. Accordingly, the court finds that the defendants have failed to satisfy the requirements for removal under the federal officer's removal statute, and that removal on this basis was improper.[4] This case must, therefore, be remanded to state court.

## B.  Jurisdiction Based Upon Federal Statutory and Common Law Defenses

District courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It is well-settled, however, that an anticipated defense based upon federal law does not create subject matter jurisdiction. *See Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). For removal under 28 U.S.C. §§ 1441 and 1331, the "well-pleaded complaint rule requires the federal question be

---

[4] The court will not address the remaining *Feidt* criteria as they are now moot.

presented on the face of the plaintiff's properly pleaded complaint." *Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.*, 858 F.2d 936, 939 (3d Cir. 1988) (citations omitted). Under an exception to the well-pleaded complaint rule known as the complete preemption doctrine, "the preemptive force of a statute can be 'so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111,113 (3d Cir. 1990).

Here, the plaintiffs have not alleged any causes of action arising under the Constitution, laws, or treaties of the United States. So, there is no federal question presented on the face of the plaintiffs' complaint. Nonetheless, the defendants contend that this case should not be remanded to state court because they intend to assert defenses based on federal statutory and common law. (D.I. 1 at ¶ 23.) Specifically, they argue that the Defense Base Act ("DBA") (1) preempts all of the plaintiffs' allegations against them, (2) that they are covered by the exclusivity provision of the DBA, and (3) that they have asserted a colorable federal defense based on the DBA. (D.I. 18 at 28.)

The court is not persuaded by the defendants arguments in this regard. First, as the plaintiffs correctly note, the DBA applies the Longshore and Harbor Workers' Compensation Act ("LHWCA") to persons working abroad under government contracts and subcontracts. *See* 42 U.S.C. § 1651(a). The LHWCA, however, does not provide any direct causes of action or preempt state law, and has been held to be "nothing more than a statutory defense to a state-court cause of action -- *the classic circumstance of non-removability.*" *Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157, 1166 (5th Cir. 1989) (emphasis added). Second, the defendants have failed

to point to any relevant authority that contradicts *Aaron*, or that otherwise supports their position. The defendants simply have not sufficiently demonstrated (and the court is not satisfied) that the complete preemption exception to the well-pleaded complaint rule applies in this case. The court must, therefore, remand this case to state court.

## IV.   CONCLUSION

For the foregoing reasons, the court will grant plaintiffs' Motion to Remand (D.I. 10) and deny defendants' Motion to Dismiss (D.I. 13) as moot.

Dated: November 17, 2008

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHELLE DEULEY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | C.A. No. 06-605 GMS |
| v. ) | |
| ) | |
| DYNCORP INTERNATIONAL, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion to Remand (D.I. 10) is GRANTED; and

2. Defendants' Motion to Dismiss (D.I. 13) is DENIED as moot.

Dated: November 17, 2008

CHIEF, UNITED STATES DISTRICT JUDGE